■ In the Matter of JESSE FRIEDMAN, Respondent, v KATHLEEN M. RICE, as Nassau County District Attorney, Appellant. [20 NYS3d 600]—

In a proceeding pursuant to CPLR article 78, inter alia, to compel the production of certain documents pursuant to the Freedom of Information Law (Public Officers Law art 6) and CPL 190.25 (4), the appeal is from a judgment of the Supreme Court, Nassau County (Winslow, J.), dated August 23, 2013, which granted the petition and directed the Nassau County District Attorney to disclose the subject documents, with certain redactions. By decision and order on motion dated October 1, 2013, this Court granted that branch of the motion of Kathleen M. Rice, in her official capacity as the Nassau County District Attorney, which was to confirm that an

automatic stay is in effect pursuant to CPLR 5519 (a), pending hearing and determination of the appeal.

Ordered that the judgment is reversed, on the law, without costs or disbursements, the petition is denied, and the proceeding is dismissed on the merits.

In 1988, the petitioner pleaded guilty to several sex offenses. He served 13 years in prison. In 2010, the Nassau County District Attorney (hereinafter the District Attorney) assigned a team of senior prosecutors to reinvestigate the petitioner's criminal case, with the assistance of a panel of criminal justice experts (hereinafter the advisory panel). During the course of the reinvestigation, the petitioner submitted a request to the District Attorney's office pursuant to the Freedom of Information Law (Public Officers Law art 6; hereinafter FOIL), seeking disclosure of the documents provided to the advisory panel. The District Attorney's office denied the petitioner's FOIL request and informed him, among other things, that the members of the advisory panel had access to most of the documents in his case file and had reviewed redacted witness statements, summaries and analyses of witness interviews, and inter- and intra-agency communications. The District Attorney's office indicated that the members of the advisory panel were not able to review unredacted witness statements or the grand jury minutes. The denial of the petitioner's FOIL request was upheld on administrative appeal.

Thereafter, the petitioner commenced this proceeding pursuant to CPLR article 78 to review the determination denying his FOIL request. In addition, the petition sought disclosure of the entire case file and, pursuant to CPL 190.25 (4), the release of the grand jury minutes and records. During the pendency of this proceeding, the District Attorney's office released the reinvestigation report with supporting documents, which included the inter- and intra-agency communications from the petitioner's case file. In the judgment appealed from, the Supreme Court granted the petition and directed the District Attorney to disclose the petitioner's entire case file and the grand jury materials, with redactions to protect the identities of three complainants.

As an initial matter, although the petition sought the disclosure of certain documents that were not within the scope of the petitioner's FOIL request to the District Attorney's office, this CPLR article 78 proceeding is not barred by the doctrine of exhaustion of administrative remedies. The petitioner's submissions, which included the letters from the District Attorney's office denying his FOIL request, established

that, without a court order, any attempt to seek disclosure from the District Attorney's office of the additional documents identified by the District Attorney, consisting of the grand jury minutes and unredacted witness statements, would have been futile (*see Matter of New York Times Co. v City of N.Y. Police Dept.*, 103 AD3d 405, 408-409 [2013]; *see also* Civil Rights Law § 50-b [2] [b]; CPL 190.25 [4] [a]; *Matter of Bridgewater v Johnson,* 44 AD3d 549, 550 [2007]).

"FOIL requires that state and municipal agencies 'make available for public inspection and copying all records,' subject to certain exemptions" (*Matter of Madera v Elmont Pub. Lib.*, 101 AD3d 726, 727 [2012], quoting Public Officers Law § 87 [2]; *see Matter of Data Tree, LLC v Romaine,* 9 NY3d 454, 462 [2007]; *Matter of Cook v Nassau County Police Dept.*, 110 AD3d 718, 719 [2013]). "Exemptions are to be narrowly construed to provide maximum access, and the agency seeking to prevent disclosure carries the burden of demonstrating that the requested material falls squarely within a FOIL exemption by articulating a particularized and specific justification for denying access" (*Matter of Capital Newspapers Div. of Hearst Corp. v Burns,* 67 NY2d 562, 566 [1986]; *see Matter of Town of Waterford v New York State Dept. of Envtl. Conservation,* 18 NY3d 652, 657 [2012]; *Matter of Data Tree, LLC v Romaine,* 9 NY3d at 462; *Matter of Madera v Elmont Pub. Lib.*, 101 AD3d at 727).

Here, the District Attorney met her burden of demonstrating that the witness statements and other documents containing information provided to law enforcement officials during the criminal investigation by witnesses who did not testify at trial were exempt from disclosure under Public Officers Law § 87 (2) (e) (iii). " '[T]he statements of nontestifying witnesses are confidential and not disclosable under FOIL' " (*Matter of Esposito v Rice,* 67 AD3d 797, 797 [2009], quoting *Matter of Johnson v Hynes,* 264 AD2d 777, 777 [1999]; *see* Public Officers Law § 87 [2] [e] [iii]; *Matter of Zarvela v Banks,* 117 AD3d 1070, 1071 [2014]; *Matter of Williams v Erie County Dist. Attorney,* 255 AD2d 863 [1998]; *Matter of Spencer v New York State Police,* 187 AD2d 919, 922 [1992]; *Matter of Moore v Santucci,* 151 AD2d 677, 679 [1989]). Thus, the documents sought by the petitioner, which contain statements of nontestifying witnesses, are not disclosable under FOIL.

Contrary to the petitioner's contention, the fact that he pleaded guilty and forfeited his right to a trial does not warrant a different conclusion. Under this Court's jurisprudence, the statements of nontestifying witnesses are confidential, and

that "cloak of confidentiality" is removed "once the statements have been used in open court" (*Matter of Moore v Santucci*, 151 AD2d at 679). The entry of the petitioner's plea of guilty did not remove the "cloak of confidentiality" from the statements of the nontestifying witnesses. Thus, those statements remain confidential and are not disclosable under FOIL.

Contrary to our dissenting colleague's opinion, we decline to depart from our established jurisprudence, which holds that the statements of nontestifying witness are confidential and not disclosable under FOIL. Public Officers Law § 87 (2) (e) (iii) exempts from disclosure records that are "compiled for law enforcement purposes and which, if disclosed, would . . . identify a confidential source or disclose confidential information relating to a criminal investigation." Statements made by witnesses to law enforcement officials in the course of a criminal investigation are confidential in nature, and, thus, the disclosure of such statements would constitute disclosure of "confidential information relating to a criminal investigation" (Public Officers Law § 87 [2] [e] [iii]). The rule holding that such statements are inherently confidential is sound, as it encourages " 'private citizens to furnish controversial information' " to law enforcement officials (*Hawkins v Kurlander*, 98 AD2d 14, 16 [1983] [discussing the purpose of the "law enforcement investigation exemption"], quoting *Pope v United States*, 599 F2d 1383, 1387 [5th Cir 1979]). This rule of confidentiality protects not only complaining witnesses, but also accused individuals who, for instance, are never formally charged with a crime or are found innocent of charged crimes. At the time the witness statement is made to law enforcement officials, it is confidential, and this "cloak of confidentiality" remains in place until the statement is used in open court or the witness testifies at trial (*Matter of Moore v Santucci*, 151 AD2d at 679). Consequently, the statements of nontestifying witnesses are confidential, and the disclosure of such statements would constitute the "disclos[ure of] confidential information relating to a criminal investigation" (Public Officers Law § 87 [2] [e] [iii]). Accordingly, the statements of nontestifying witnesses are not disclosable under FOIL.

In addition, the petitioner failed to make the requisite showing in support of that branch of his petition which was pursuant to CPL 190.25 (4) to compel disclosure of the grand jury materials. "[S]ecrecy has been an integral feature of Grand Jury proceedings since well before the founding of our Nation" (*Matter of District Attorney of Suffolk County*, 58 NY2d 436, 443 [1983]). While "secrecy of grand jury minutes is not

absolute" (*People v Di Napoli*, 27 NY2d 229, 234 [1970]), "a presumption of confidentiality attaches to the record of Grand Jury proceedings" (*People v Fetcho*, 91 NY2d 765, 769 [1998]). As a threshold matter, a party seeking disclosure of grand jury materials under CPL 190.25 (4) (a) "must establish a compelling and particularized need for them" (*People v Robinson*, 98 NY2d 755, 756 [2002]; *see Matter of Lungen v Kane*, 88 NY2d 861, 862 [1996]; *Matter of District Attorney of Suffolk County*, 58 NY2d at 444; *Matter of Aiani v Donovan*, 98 AD3d 972, 973 [2012]). "Only then must the court balance various factors to assess, in its discretion, whether disclosure is appropriate under the circumstances presented" (*People v Robinson*, 98 NY2d at 756; *see People v Fetcho*, 91 NY2d at 769; *Matter of Lungen v Kane*, 88 NY2d at 862-863; *Matter of Aiani v Donovan*, 98 AD3d at 973).

As recently stated by this Court in *Matter of James v Donovan* (130 AD3d 1032, 1037 [2015]), "[a] party seeking disclosure will not satisfy the compelling and particularized need threshold simply by asserting, or even showing, that a public interest is involved." Rather, "[t]he party must, by a factual presentation, demonstrate why, and to what extent, the party requires the minutes of a particular grand jury proceeding 'to advance the actions or measures taken, or proposed (e.g., legal action, administrative inquiry or legislative investigation), to insure that the public interest has been, or will be, served' " (*id.* at 1037, quoting *Matter of District Attorney of Suffolk County*, 86 AD2d 294, 299 [1982], *affd* 58 NY2d 436 [1983]).

Despite the public interest involved in this case, the petitioner's submissions did not establish a compelling and particularized need for disclosure of the grand jury materials (*see Matter of District Attorney of Suffolk County*, 58 NY2d at 444-445; *Matter of James v Donovan*, 130 AD3d 1032 [2015]; *Matter of Lustberg v Curry*, 235 AD2d 615, 616 [1997]; *cf. Matter of Aiani v Donovan*, 98 AD3d at 974). The petitioner failed to demonstrate, by factual presentation, why, and to what extent, the grand jury materials are necessary to insure that the public interest will be served. In particular, the petitioner failed to sufficiently demonstrate how examination of the grand jury minutes and records will support his claim of actual innocence. Furthermore, contrary to our dissenting colleague's opinion, the petitioner failed to demonstrate, by factual presentation, why disclosure of the grand jury materials is necessary to determine whether flawed interviewing techniques were used in the investigation which resulted in the sex abuse charges against the petitioner. Although our dissenting col-

league asserts that there is a likelihood that the grand jury minutes provide the link between the victim statements and the increasing number of counts in the successive indictments filed in the criminal proceeding against the petitioner, any such link does not constitute a compelling and particularized need for the grand jury materials, especially since the increased counts may be attributed to factors such as an increased number of children testifying with respect to the successive indictments. Moreover, there is no indication in this record that the Supreme Court ever reviewed the grand jury minutes in camera before directing their disclosure. Under these circumstances, the court erred in directing the disclosure of the grand jury materials.

Accordingly, the Supreme Court should have denied the petition and dismissed the proceeding.

The District Attorney's remaining contention need not be reached in light of our determination. Leventhal, J.P., Hall and Maltese, JJ., concur.

Barros, J., dissents, and votes to modify the judgment, on the law and in the exercise of discretion, by deleting the provision thereof directing the Nassau County District Attorney to disclose "every piece of paper that has been generated in the matter of People against Jesse Friedman," and substituting therefore a provision directing the Nassau County District Attorney to disclose to the petitioner (a) the redacted materials provided to the advisory panel, (b) the investigatory and case files, redacting only the names of the complainants who objected to the disclosure of their identities, and (c) the grand jury minutes, redacting only the names of the complainants who objected to the disclosure of their identities, to affirm the judgment as so modified, and to remit the matter to the Supreme Court, Nassau County, for further proceedings, in accordance with the following memorandum:

In this proceeding pursuant to CPLR article 78, the petitioner sought: (1) pursuant to Public Officers Law § 89 (4) (b), judicial review of the determination of the Nassau County District Attorney's office denying his request for the disclosure of certain documents pursuant to the Freedom of Information Law (Public Officers Law art 6 [hereinafter FOIL]); (2) pursuant to Civil Rights Law § 50-b (2) (b), the disclosure of "the case files and investigatory files" held by the Nassau County District Attorney's office; and (3) pursuant to CPL 190.25, disclosure of the grand jury minutes based upon a compelling and particularized need. Upon conducting an in camera review, the Supreme Court granted the petition and directed the Nassau County

District Attorney (hereinafter the District Attorney) to disclose "every piece of paper that has been generated in the matter of People against Jesse Friedman," redacting only the names of the complainants who, upon being served with the petition, objected to their identities being disclosed.

For the reasons set forth herein, I would modify the judgment by deleting the provision thereof directing the District Attorney to disclose "every piece of paper that has been generated in the matter of People against Jesse Friedman," and substituting therefor a provision directing the District Attorney to disclose to the petitioner the following: (1) pursuant to FOIL, the redacted materials provided to the advisory panel; (2) pursuant to Civil Rights Law § 50-b (2) (b), the investigatory and case files, redacting only the names of the complainants who objected to their identities being disclosed; and (3) pursuant to CPL 190.25 (4) (a), the grand jury minutes, redacting only the names of the complainants who objected to their identities being disclosed. I would also remit the matter to the Supreme Court, Nassau County, for proceedings to fashion and issue an order of nondisclosure, to which the petitioner agreed, so as to prevent public disclosure of the identity of any complainant.

I. The FOIL Request

In response to the petitioner's FOIL request for the disclosure of documents provided to the advisory panel, the District Attorney's office revealed that the advisory panel reviewed four categories of information: (1) redacted witness statements; (2) summaries of interviews with fact witnesses; (3) the District Attorney's analyses of witness interviews and "other evidence"; and (4) inter- and intra-agency communications. As to each category, the District Attorney's office denied the disclosure request, invoking exemptions from disclosure set forth in FOIL.

In reversing the Supreme Court, the majority has determined that the District Attorney met her burden of demonstrating that the entire contents of the investigatory and case files, i.e, "every piece of paper that has been generated in the matter of People against Jesse Friedman," were exempt from disclosure pursuant to Public Officers Law § 87 (2) (e) (iii) (hereinafter the confidentiality exemption). I disagree.

In reaching its determination, the majority relies upon cases from this Court holding that where a defendant has been convicted by a jury after trial, "the requested statements of witnesses who did not testify at trial are confidential and are not disclosable" under the confidentiality exemption (*Matter of Zarvela v Banks*, 117 AD3d 1070, 1071 [2014]; *see Matter of*

*Esposito v Rice*, 67 AD3d 797, 797-798 [2009]; *Matter of Johnson v Hynes*, 264 AD2d 777 [1999]; *Matter of Moore v Santucci*, 151 AD2d 677, 679 [1989]; *Matter of Knight v Gold*, 53 AD2d 694 [1976]).

This blanket rule of nondisclosure is derived from common law (*see Matter of Werfel v Fitzgerald*, 23 AD2d 306, 309 [1965]), and an interpretation of a prior version of FOIL, which broadly exempted from disclosure information which is "part of investigatory files compiled for law enforcement purposes" (*Matter of Knight v Gold*, 53 AD2d at 694 [internal quotation marks omitted]; *see* Public Officers Law former § 88 [7] [d]). With amendments to the FOIL statute in 1977, which became effective in 1978, the legislature replaced the blanket exemption with Public Officers Law § 87 (2) (e) (i)-(iv). The amendments "broadened the reach of the statute by making all records presumptively subject to disclosure, rather than certain enumerated categories" (*Matter of Miracle Mile Assoc. v Yudelson*, 68 AD2d 176, 181 [1979]; *see Matter of Sheehan v City of Binghamton*, 59 AD2d 808, 808-809 [1977]; *see also Matter of Fink v Lefkowitz*, 47 NY2d 567 [1979]; *Church of Scientology of N.Y. v State of New York*, 61 AD2d 942, 943 [1978], *affd* 46 NY2d 906 [1979]).

Unlike the prior version, the current FOIL statute delineates four categories of records compiled for law enforcement purposes that are exempt from disclosure (*see* Public Officers Law § 87 [2] [e] [i]-[iv]). None of these exemptions suggests that all pretrial investigatory materials are confidential. While there is an exemption from disclosure for records that would "*interfere* with law enforcement investigations" (Public Officers Law § 87 [2] [e] [i] [emphasis added]), or that would reveal nonroutine "investigative techniques or procedures" (Public Officers Law § 87 [2] [e] [iv]), neither of those exemptions is before this Court.

The confidentiality exemption, relied upon by the District Attorney, applies to records that are (1) "compiled for law enforcement purposes," and (2) "which, if disclosed, would . . . identify a confidential source or disclose confidential information relating to a criminal investigation" (Public Officers Law § 87 [2] [e] [iii]). Therefore, in order to invoke this exemption, the District Attorney was required to show that the requested information was compiled for law enforcement purposes, and that the release of the material would result in the specific harm set forth in the statute.

The purpose of the confidentiality exemption is "to encourage private citizens to furnish controversial information" to law

enforcement by "assuring confidentiality under certain circumstances" (*Hawkins v Kurlander*, 98 AD2d 14, 16 [1983] [internal quotation marks omitted]; *see Pope v United States*, 599 F2d 1383 [5th Cir 1979]).

"FOIL's legislative history . . . indicates that many of its provisions . . . were patterned after the Federal analogue," i.e., the Freedom of Information Act (5 USC § 552) (*Matter of Lesher v Hynes*, 19 NY3d 57, 64 [2012] [internal quotation marks omitted]; *see Matter of Fink v Lefkowitz*, 47 NY2d 567, 572 n [1979]). "Accordingly, Federal case law and legislative history . . . are instructive when interpreting such provisions" (*Matter of Lesher v Hynes*, 19 NY3d at 64 [internal quotation marks omitted]). FOIL's confidentiality exemption is modeled on 5 USC § 552 (b) (7) (D) (*see Matter of Lesher v Hynes*, 19 NY3d at 64; *see also Department of Justice v Landano*, 508 US 165 [1993]). In interpreting 5 USC § 552 (b) (7) (D), the United States Supreme Court has held that a source is "confidential" if he or she provided information "under an express assurance of confidentiality or in circumstances from which such an assurance could be reasonably inferred" (*Department of Justice v Landano*, 508 US at 172 [internal quotation marks omitted]).

Similarly, other departments of the Appellate Division have held that an agency invoking the confidentiality exemption under FOIL must show facts and circumstances indicative of either an express or implied promise of confidentiality to the witnesses whose statements are being requested (*see Matter of Exoneration Initiative v New York City Police Dept.*, 114 AD3d 436, 440 [2014] [witness statement does not fall under the confidentiality exemption "in the absence of any evidence that this person received an express or implied promise of confidentiality"]; *Matter of Gomez v Fischer*, 74 AD3d 1399, 1401 [2010] ["(s)tatements by a witness must be disclosed absent a showing that he or she was a confidential informant or requested or was promised anonymity, or that his or her life or safety would be endangered by disclosure"]; *Matter of Carnevale v City of Albany*, 68 AD3d 1290, 1292 [2009]; *Matter of John H. v Goord*, 27 AD3d 798, 799 [2006]; *Matter of Johnson v New York City Police Dept.*, 257 AD2d 343, 348 [1999]; *Brown v Town of Amherst*, 195 AD2d 979, 979 [1993]; *cf. Matter of Allen v Strojnowski*, 129 AD2d 700, 701 [1987] ["(t)he names, addresses, and statements of confidential witnesses compiled during a criminal investigation are exempt from disclosure"]).

The unduly broad construction of the confidentiality exemption given by this Department is inconsistent with the Court of Appeals' holdings that reject "blanket exemptions for particular

types of documents" (*Matter of Gould v New York City Police Dept.*, 89 NY2d 267, 275 [1996]; *see Matter of Fink v Lefkowitz*, 47 NY2d at 571), and that require the agency invoking one of the exemptions of Public Officers Law § 87 (2) to "articulate particularized and specific justification for not disclosing requested documents" and, if necessary, submit the requested materials to the court for in camera inspection (*Matter of Gould v New York City Police Dept.*, 89 NY2d at 275 [internal quotation marks omitted]; *see Matter of Town of Waterford v New York State Dept. of Envtl. Conservation*, 18 NY3d 652, 657 [2012]; *Matter of Newsday, Inc. v Empire State Dev. Corp.*, 98 NY2d 359, 362 [2002]; *Matter of Capital Newspapers, Div. of Hearst Corp. v Whalen*, 69 NY2d 246, 252 [1987]).

For example, in *Matter of Gould v New York City Police Dept.* (89 NY2d 267 [1996]), the petitioner sought police activity logs and complaint follow-up reports, which included witness statements (*see id.* at 277). The Court of Appeals held that those investigatory records were not categorically exempt from disclosure under FOIL (*see id.* at 275-276), and that the respondent had to make the appropriate particularized showing that the claimed exemption applied (*see id.* at 275; *see also Matter of Fappiano v New York City Police Dept.*, 95 NY2d 738, 746 [2001]).

In my view, the confidentiality exemption should not be construed to categorically permit the District Attorney to withhold all of the statements of witnesses who did not testify at trial. Rather, consistency with the aforementioned authorities compels the conclusion that the confidentiality exemption shields from disclosure only the statements of confidential sources and information derived therefrom.

Here, the District Attorney failed to make any showing that the complainants qualify as "confidential sources" within the meaning of Public Officers Law § 87 (2) (e) (iii) by showing either that an express promise of confidentiality was made, or the existence of circumstances from which such an assurance can be reasonably inferred. To the contrary, the circumstances suggest that the complainants were not confidential sources, since their trial testimony would have been required to prove the numerous charges against the petitioner (*see e.g. Cornell Univ. v City of N.Y. Police Dept.*, 153 AD2d 515, 517 [1989] ["(a)ny of the witnesses could have been called to testify at a criminal trial, their names and addresses were discoverable absent a protective order . . . and, in fact, may have been disclosed"]). The District Attorney acknowledges that, prior to the entry of the petitioner's guilty plea, and in preparation for

trial, the prosecutor provided to the petitioner's defense counsel the names of all of the complainants. The inference from such disclosure is that the prosecutor intended to call the complainants as witnesses during the trial, and, therefore, would have been required to turn over to the petitioner those witnesses' prior statements (*see People v Rosario*, 9 NY2d 286 [1961]).

While the District Attorney argues that the privacy of the victims is often a significant consideration in any prosecutor's decision to plea bargain in sex crimes cases, such consideration does not amount to an express or implied *promise* of confidentiality so as to qualify the victims as "confidential sources" within the meaning of Public Officers Law § 87 (2) (e) (iii). If the defendant does not accept the prosecutor's offer to plead guilty, he or she has the right to confront his or her accusers at trial (*see* NY Const, art I, § 6; *People v Hill*, 9 NY3d 189, 191 [2007]).

Since the majority determined that the confidentiality exemption applied, it did not go on to consider the other exemption invoked by the District Attorney, i.e., Public Officers Law § 87 (2) (a), which permits an agency to deny access to records which "are specifically exempted from disclosure by state or federal statute." One such statute exempting records from disclosure is Civil Rights Law § 50-b (1), which requires agencies to withhold from disclosure documents that tend to identify the victim of a sex offense (*see Matter of Karlin v McMahon*, 96 NY2d 842, 843 [2001]).

Here, since the District Attorney acknowledged that the names of the complainants were redacted from the records provided to the advisory panel, she failed to meet her burden of demonstrating that those redacted materials tend to identify the victim of a sex offense. "If a requested document does not contain information that tends to identify the victim of a sex crime, and the FOIL request is otherwise valid, the document must be disclosed" (*Matter of Fappiano v New York City Police Dept.*, 95 NY2d at 748). While the District Attorney is correct that FOIL does not require her to make redactions in order to make otherwise exempt materials available to the petitioner (*see Matter of Karlin v McMahon*, 96 NY2d at 843), the requested materials were already redacted in compliance with Civil Rights Law § 50-b in order to provide them to the advisory panel.

II. Disclosure Pursuant to Civil Rights Law § 50-b (2) (b)

The petitioner also sought, pursuant to Civil Rights Law § 50-b (2) (b), to compel the District Attorney to disclose to him "the case files and investigatory files" held by the District Attorney's office based upon his demonstration of "good cause"

(*see e.g. Matter of Radio City Music Hall Prods. [New York City Police Dept.]*, 121 AD2d 230 [1986]; *Matter of Tonia E.-A. v Kathleen K.*, 12 Misc 3d 828 [Fam Ct, Orange County 2006]; *Doe v Riback*, 7 Misc 3d 341 [Sup Ct, Albany County 2005]). Unlike FOIL, which requires a person seeking information to first request such information from the agency, and, if denied, to then exhaust administrative remedies before resorting to a judicial forum to gain relief (*see* Public Officers Law § 89 [4] [a]; *Matter of Bradhurst Site Constr. Corp. v Zoning Bd. of Appeals, Town of Mount Pleasant*, 128 AD3d 817, 818 [2015]; *Doe v Lake Grove Sch.*, 107 AD3d 841, 842-843 [2013]), an application for records under Civil Rights Law § 50-b (2) (b) must be made directly to "a court having jurisdiction over the alleged offense." Civil Rights Law § 50-b (2) (b) permits disclosure of material that identifies the victim of a sex offense to "[a]ny person who . . . demonstrates to the satisfaction of the court that good cause exists for disclosure to that person." Civil Rights Law § 50-b (3) provides that "[t]he court . . . may order any restrictions upon disclosure authorized in subdivision two of this section, as it deems necessary and proper to preserve the confidentiality of the identity of the victim."

Here, as required by the statute, the petitioner served the petition on each of the complainants in the criminal proceeding (*see* Civil Rights Law § 50-b [2] [b]). Some complainants opposed the disclosure of the records to the petitioner. After conducting an in camera review, the Supreme Court directed the District Attorney to disclose, among other things, the case and investigatory files, redacting the names of those objecting complainants.

The Supreme Court properly determined that the petitioner established good cause for the requested materials. In support of his petition, he submitted numerous exhibits, including film footage of interviews of complainants, witnesses, and detectives, as well as affidavits from complainants and other witnesses, showing, inter alia, that several complainants, who testified before the grand jury, recanted their accusations against the petitioner, and that the detectives investigating the claims of violent sexual abuse against children implemented aggressive, suggestive, and otherwise flawed interview techniques in order to obtain statements inculpating the petitioner. The petitioner's evidence also showed that the investigators did not pursue any forensic evidence, including medical evidence, that would confirm the complainants' allegations of violent sexual abuse. One complainant who testified at the grand jury, and who has not recanted his testimony, admitted

that he was hypnotized prior to making accusations against the petitioner. Indeed, after reviewing many of the same exhibits attached to the instant petition, the United States Court of Appeals for the Second Circuit commented that the petitioner came forward with "substantial evidence that flawed interviewing techniques were used to produce a flood of allegations, which the then-District Attorney of Nassau County wrung into over two hundred claims of child sexual abuse against [the] petitioner," and that "the police, prosecutors, and the judge did everything they could to coerce a guilty plea and avoid a trial" (*Friedman v Rehal*, 618 F3d 142, 158 [2d Cir 2010]).

The petitioner also submitted an affidavit from an expert in the field of investigation of crimes against children, particularly with respect to "child sex rings." The expert averred, in effect, that in order to establish whether flawed police tactics produced false or inaccurate information, a complete review of the details of the child interviews was required. Although the District Attorney's reinvestigation report, which was generated in response to the aforementioned Second Circuit opinion, concluded that the petitioner's claims of improper police tactics were exaggerated, it also acknowledged that "[i]n hindsight, the investigation was not ideal," and that since the time of the investigation nearly 28 years ago, "methodologies for interviewing child witnesses have evolved."

Under these circumstances, weighing the petitioner's need against the confidentiality concerns of the individuals who objected to the disclosure, the Supreme Court properly ordered the disclosure, redacting the names of those individuals. However, the Supreme Court improvidently exercised its discretion (*see* Civil Rights Law § 50-b [3]) in failing to issue an order of nondisclosure, to which the petitioner agreed, so as to prevent public disclosure of the identity of any complainant.

III. Disclosure of Grand Jury Minutes

Grand jury minutes are court records, and are, therefore, exempt from the ambit of FOIL (*see Matter of Bridgewater v Johnson*, 44 AD3d 549, 550 [2007]; *Matter of Hall v Bongiorno*, 305 AD2d 508, 509 [2003]). Disclosure of grand jury minutes is governed by CPL 190.25 (4) (a), which provides, in pertinent part, that "[g]rand jury proceedings are secret, and no grand juror, or other person specified in subdivision three of this section or section 215.70 of the penal law, may, except in the lawful discharge of his duties or upon written order of the court, disclose the nature or substance of any grand jury testimony, evidence, or any decision, result or other matter attending a grand jury proceeding."

Secrecy of grand jury minutes is not absolute, and the determination of "whether disclosure should be permitted is addressed to, and rests in, the trial judge's discretion" (*People v Di Napoli*, 27 NY2d 229, 234 [1970]). "As a threshold matter, a party seeking disclosure of grand jury minutes must establish a compelling and particularized need for them. Only then must the court balance various factors to assess, in its discretion, whether disclosure is appropriate under the circumstances presented" (*People v Robinson*, 98 NY2d 755, 756 [2002]; *see People v Fetcho*, 91 NY2d 765, 769 [1998]; *Matter of Lungen v Kane*, 88 NY2d 861, 862-863 [1996]; *Matter of District Attorney of Suffolk County*, 58 NY2d 436, 444 [1983]).

Contrary to the majority's conclusion, I find that the petitioner's submissions established a compelling and particularized need for disclosure of the grand jury minutes, i.e., to determine whether, as stated by the Second Circuit, "flawed interviewing techniques were used to produce a flood of allegations, which the then-District Attorney of Nassau County wrung into over two hundred claims of child sexual abuse against [the] petitioner" (*Friedman v Rehal*, 618 F3d at 158). Between December 1987 and November 1988, the petitioner was charged with 243 counts of sexual abuse in three separate indictments. The first indictment contained 10 counts against the petitioner, and the third indictment, based upon testimony of many of the same witnesses, contained 198 counts against him. The petitioner demonstrated, with extensive evidentiary submissions, a likelihood that the grand jury minutes provide the link between the victim statements contained in the investigatory files and the increasing number of counts contained in the successive indictments. The Second Circuit commented that the allegations in the third indictment "grew increasingly bizarre, sadistic, and even logistically implausible" (*Friedman v Rehal*, 618 F3d at 147-148). The petitioner demonstrated that the public interest for disclosure of the grand jury minutes relates not only to his claims of actual innocence and of the coercion of his plea, but also in, inter alia, determining whether detectives, with the complicity of prosecutors, used inappropriate investigatory tactics, especially in their interviews of children.

The majority's rationale for determining that the petitioner "failed to sufficiently demonstrate how examination of the grand jury minutes and records will support his claim of actual innocence" is circular, since it, in essence, faults the petitioner for not having the very evidence sought by his petition.

Since the petitioner established a compelling and particular-

ized need for the grand jury minutes, such need must be weighed against the public interest favoring secrecy (*see People v Fetcho*, 91 NY2d at 769). The public interests in grand jury secrecy include: "(1) prevention of flight by a defendant who is about to be indicted; (2) protection of the grand jurors from interference from those under investigation; (3) prevention of subornation of perjury and tampering with prospective witnesses at the trial to be held as a result of any indictment the grand jury returns; (4) protection of an innocent accused from unfounded accusations if in fact no indictment is returned; and (5) assurance to prospective witnesses that their testimony will be kept secret so that they will be willing to testify freely" (*People v Di Napoli*, 27 NY2d at 235).

Applying these criteria, nearly 28 years after the conclusion of the grand jury proceedings and the petitioner's conviction upon his plea of guilty, there is no danger of any escape of persons who may be indicted, no interference with the grand jury's freedom to deliberate, no danger of subornation of perjury, and no need to protect any innocent accused person (*see id.* at 235-236). The only consideration relevant here, i.e., "assurance to prospective witnesses that their testimony will be kept secret so that they will be willing to testify freely" (*id.* at 235), does not outweigh the petitioner's demonstrated compelling and particularized need (*see People v Baxin*, 26 NY3d 6, 11 [2015] ["The possibility of deterring future witnesses from providing grand jury testimony may exist, but is less pressing here, where the possibility of disclosure arises many years after the indictment and conviction"]).

Therefore, the Supreme Court providently exercised its discretion in directing the disclosure of the grand jury minutes to the petitioner. However, again, the Supreme Court improvidently exercised its discretion (*see* Civil Rights Law § 50-b [3]) in failing to issue an order of nondisclosure, to which the petitioner agreed, so as to prevent public disclosure of the identity of any complainant.

Therefore, I dissent, and would modify the judgment appealed from as indicated.